IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION 272, AFL-CIO, | ) ) ) ) | |
| Plaintiff/Counterclaim Defendant | ) ) | |
| v. | ) ) | Civil Action No. 07-304 Judge Joy Flowers Conti |
| FIRSTENERGY GENERATION CORP., | ) ) | Magistrate Judge Lisa Pupo Lenihan |
| Defendant/Counterclaim Plaintiff | ) | |

# REPORT AND RECOMMENDATION

## I. RECOMMENDATION

It is respectfully recommended that (a) the Defendant's Motion for Summary Judgment be granted as to enforcement of the arbitration award, but denied as to its request for fees and costs, and (b) the Plaintiff's Motion for Summary Judgment be denied, as the evidence cannot support a finding, under the applicable standards, that the Arbitrator's February 9, 2007 Decision either exceeded the scope of the issue(s) presented for arbitration by the parties or directed resolution/remedy that was improper in light of the parties' collective bargaining agreement (the "CBA").

## II. REPORT

### A. Statement of Facts and Procedural History

This case involves claims related to a February 9, 2007 labor arbitration decision (the "Decision"). Plaintiff (the "Union") contends that the entire Decision should be vacated because the Arbitrator exceeded his authority by deciding issues not before him and/or because he ignored the plain language of the contract in directing that Defendant (the "Employer") offer particular progression-line entry-level positions ("C jobs") to the individual employees whose cross-bids for intermediate level positions ("B jobs") were denied (the "Grievants"). More particularly:

#### 1. Plant Job Structure

Employer operates a coal-fired electrical generating plant in Shippingport, Pennsylvania. (It also operates facilities at other locations, not at issue in the case *sub judice*.) The Shippingport Plant employs approximately 375 Union members in different job categories within departments, requiring different skills and referred to as "lines of progression." The eight (8) lines of progression are: Mechanical-Maintenance, Plant Operations, Electrical-Maintenance, Laboratory, Storeroom, Instrument & Test ("I&T"), Lime Operations, and Yard. In accordance with the labor contract (see, *e.g.*, CBA Appendixes of wage rates/labor grades for job classifications), positions within each line of progression are organized into three levels: A, B and C, with C jobs being the entry-level positions requiring minimal skills, B jobs requiring intermediate skills and education/experience, and C jobs requiring the fullest/most advanced skill set in that job category.

**2. Collective Bargaining Agreement Provisions**

The parties' CBA provides, in relevant part, as follows:

<u>Article IV</u>  Management Responsibilities - provides that "[t]he Company has the responsibility and the duty to manage and control the plant facilities and their operations, including "the classification of work and the number of employees to be assigned to each classification"; "hiring, transfer, promotion and layoff of employees"; and "supervision, direction and assignment of employees; subject, however, to the provisions, conditions and limitations expressly set forth in [the CBA]."

<u>Article V</u>  Definitions - Section 2 provides that a new employee is "probationary" for the first 18 months of service and has no seniority rights until completion of 6 months employment.

<u>Article VI</u>  Seniority - defines "job seniority" as time of service in a particular job classification/line of progression and "plant seniority" as time of service at the Plant. Sections 3 and 4 provide that entry-level C jobs will be filled by *plant seniority* (subject to any qualification requirements), but B jobs and A jobs will be filed by *job seniority* (subject to qualification requirements).

<u>Article XVII</u>  Wages - provides that a "substantial change in the duties and responsibilities of any job classification or establish[ment] of a new job classification" requires wage-rate negotiation with the Union.

### 3. Employer's Unilateral Change to Job Structure

In 2005, Employer was concerned about upcoming retirements among its skilled workforce and its ability to meet operational needs. Its assessment was that it needed to raise the skill and experience levels of its current workforce by significantly increasing its intermediate-level B jobs and hiring new employees at that level. Employer, as part of a "Workforce Development Initiative" combined C and B job classifications and revised duties and responsibilities; it then attempted - unsuccessfully - to negotiate new wage rates for these positions with the Union. In January, 2006 Employer advised the Union that it would proceed to discontinue staffing C jobs (although the positions would "remain on the Plant organization charts") and hire directly into B jobs (without change to the job duties/specifications); it noted that employees in C jobs would be encouraged to qualify for promotion to B jobs as soon as possible.

In accordance with the CBA, the new vacancies were first made available to existing employees. Employer filled thirty-five (35) B jobs with C employees in the same line of progression on a seniority basis. Some of the remaining B jobs were filled by employees who "cross-bid", *e.g.*, applied for a B job outside their line of progression and were deemed qualified by the Employer on the basis of training, education and work experience. The remaining positions were filled by approximately thirty-six (36) new employees hired from outside the company. The Union filed grievances on behalf of eight (8) employees who attempted to cross-bid into a B job, *i.e.*, bid out of their departments/across their lines of progression into other

departments/job categories; believed they should have been awarded the positions on the basis of seniority; but were denied the positions because the Employer found them unqualified.

   **4. Arbitration Decision**

The February 9, 2007 Decision defines the Grievances as "alleg[ing] that the Company violated the contract by deeming the respective Grievants not qualified for certain of the 'B' positions they sought, thereby denying each Grievants' desired transfer into a different line of progression." (As the Union notes, the Employer's arbitration brief identified the issue in precisely this language. See Memorandum in Support of Plaintiff Union's Motion for Summary Judgment at 6.)

The Arbitrator, in his thorough and well-reasoned Decision, reviewed the negotiation history, the terms of the CBA, the Employer's elimination of C jobs, the scope of work performed by the probationary B job employees, and other evidence, and concluded that (1) Employer did not "violate the [CBA] by deeming the eight Grievants not qualified for certain of the B level positions they sought, thereby denying each Grievant's desired transfer into a different line of progression" (Decision at p. 12) but (2) by deciding to unilaterally discontinue staffing C positions, Employer nonetheless improperly "foreclosed" any opportunities for employees to bid into a new line of progression by exercise of *plant* (as opposed to job) seniority, in violation of the CBA (Decision at p. 13). The Arbitrator further concluded that Employer had attempted to "accomplish[] what it desired [in negotiations] without the agreement of the Union" but that it violated Article VI, Section 4's provision regarding plant seniority for C jobs by "effectively

5

writing it out of the contract." (See also Decision at 14-15 ("Otherwise stated, if no entry level "C" jobs in a line of progression exist for purposes of bidding, even if these jobs still exist on paper, the outcome is that no unit employee will ever be able to fill a job vacancy in an entry level job by plant seniority where qualifications are deemed sufficient. The policy adopted by the company stripped the Grievants of their contractual right to bid for a job vacancy in a beginning "C" job in a different line of progression from their current job (*i.e.*, to cross bid).")

The Arbitrator held, accordingly, that Employer's contract violation was "appropriately redressed by affording each Grievant an opportunity to exercise his/her plant seniority by cross bidding on a "C" vacancy", *i.e.*, being offered an entry-level position, in the desired departments. Decision at p. 15.

### 5. Litigation

This case was filed by the Union, which contends that the entire award should be vacated because the "only issues before the Arbitrator concerned whether or not certain bargaining unit employees were denied 'B' jobs" and "the Arbitrator decided that 'C' jobs should be made available to the grievants for bid". (Plaintiff's Consise [*sic*] Statement of Material Facts at ¶¶ 5-6). The Employer filed a counterclaim, seeking enforcement of the Arbitrator's award and also seeking an award of attorney's fees and costs, asserting that the Union's challenge was completely without justification. (Defendant's Memorandum in Support of Motion for Summary Judgment at 3).

B. **Motion for Summary Judgment**

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). Summary judgment may be entered against a party who, after adequate time for discovery, has failed to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In considering a motion for summary judgment, the Court examines the facts in the light most favorable to the non-movant, and the party moving for summary judgment must show that the evidence of record is insufficient to carry the non-movant's burden of proof, *i.e.*, that there are no genuine issues of fact to be tried. Id.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257-49 (1986). On a motion for summary judgment, however, the non-movant cannot rely solely on unsupported assertions or conclusory allegations. Id. at 249.

C. **Standard for Vacating a Labor Arbitration Award**

Review of arbitration awards is "extremely deferential", see *e.g.*, Dluhos v. Strasberg, 321 F.3d 365, 370 (3d Cir. 2003) and vacatur is appropriate only in "exceedingly narrow" circumstances, see, *e.g.*, id.; Nat'l Assoc. of Letter Carriers, AFL-CIO v. United States Postal Services, 272 F.3d 182, 185 (3d Cir. 2001) (noting that "the test used to probe the validity of a labor arbitrator's decision is a singularly undemanding one"). As the parties acknowledge, the Arbitrator's award should be upheld so long as it (a) decided issues within his authority and (b) drew its essence from the collective bargaining agreement.

The first consideration is grounded in the provision of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 10(a)(4), that an award may be vacated "if the arbitrators exceed their powers, or so imperfectly execute them that a mutual, final and definite award upon the subject matter submitted was not made." This Circuit addressed this consideration in Matteson v. Ryder System Inc., 99 F.3d 108 (3d Cir. 1996), and refined its conclusions in Metromedia Energy, Inc. v. Enserch Energy Services, Inc., 409 F.3d 574 (3d Cir. 2005). In sum, the Third Circuit has held that while an arbitrator has the authority to decide only the issues submitted by the parties, the arbitrator's interpretation of the scope of the parties' submission is accorded a high degree of deference. See Matteson, 99 F.3d at 113 ("[T]here is no doubt that our review of the interpretation of a submission is highly deferential.").; Metromedia, 409 F.3d at 579. The reviewing court is directed to "presume that an arbitrator acted within the scope of [his] authority . . . ;however, [it] may conclude that [he] exceeded [that] authority when it is obvious from the written opinion." Metromedia, 409 F.3d at 580 (quoting Roadway Package System, Inc. v. Kayser, 257 F.3d 287 (3d Cir. 2001); cf. id. (holding that record, including evidence and arguments presented, "provided an adequate basis" upon which the arbitration panel could conclude that it "was empowered to address" the issue later objected to as outside scope of arbitration).

The second consideration reflects the Supreme Court's long-standing direction that if an arbitration award is not in "manifest disregard" of the contract and "draws its essence from the collective bargaining agreement", it should be enforced by a reviewing court. Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504 (2001); W.R. Grace & Co. v. Local Union 759,

461 U.S. 757 (1983); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960). See also Metromedia, 409 F.3d at 584 (noting that the court "must uphold the arbitration . . . award so long as it 'draws its essence' from or 'arguably construes or applies' the parties' contract") (citing News Am. Pub. v. Newark Typographical Union, 918 F.2d 21, 24 (3d Cir. 1990)). And, indeed, the Third Circuit has emphasized the "effusively deferential language" employed to describe the standard for reviewing an award on the merits. Matteson, 99 F.3d at 113 (citing News America, 918 F.2d at 24 ("There must be *absolutely no support at all* in the record justifying the arbitrator's determinations for a court to deny enforcement of an award"); Ludwig Honold Mfg. v. Fletcher, 405 F.2d 1123, 1128 (3d Cir. 1969) (upholding an arbitrator's award so long as its "interpretation can *in any rational way* be derived from the [collective bargaining] agreement")) (emphasis added by Matteson Court). See also Brentwood Medical Assocs. v. United Mine Workers of America, 396 F.3d 237 (3d Cir. 2005) (summarizing question as whether parties obtained contract interpretation rationally based on language of agreement and rational award).

**D. Analysis**

**1. Scope of Issues**

The Arbitrator's conclusion that the Employer improperly denied the Grievants an opportunity to transfer, by cross-bid, into another department within the Plant was not obviously outside the scope of the issues before him. To the contrary, the issues presented reasonably gave the Arbitrator jurisdiction to decide as he did (*i.e.*, to direct that the Employer provide entry-level cross-bid opportunities to those employees). The Court notes that it is within the traditional,

9

inherent power of an arbitrator to make union employees whose rights have been violated reasonably whole. But far more importantly, it notes the highly deferential standard applicable to its review of the Arbitrator's interpretation of the scope of the issues before him, and concludes that vacatur would be unwarranted where, as here, the Decision's definition of the Grievances derived quite reasonably from the parties' submissions. See, *e.g.*, Decision at p. 8-10 (summarizing Union's positions in arbitration as encompassing objections to Employer's attempt to "find a way around" the agreement's plant seniority provisions and its express disagreement with the Employer as to whether C jobs "still exist even though they are not filled"); *supra* (noting that Decision defined issue in language of Employer's arbitration brief).

To put this another way, while it is true that "no issue was raised that B job bidders sought C jobs" (Memorandum in Support of Plaintiff Union's Motion for Summary Judgment at 7), it is also true that the issues raised reasonably encompassed the validity of the Employer's unilateral decision to cease staffing entry-level positions (*i.e.*, if C jobs had been offered, the Grievants would have been able to transfer into their desired departments); that is, in the language of the issue identified by the Employer, defined by the Arbitrator, and otherwise within the scope of the evidence and disputes submitted, Employer violated the contract in denying transfer to the Grievants. Cf. Accuride Erie L.P. v. International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, 445 F.Supp.2d 496 (W.D. Pa. 2006) (noting that arbitrator's interpretation of issue in light of submissions and evidence presented at hearing was not "completely lacking in support or reason" and therefore, under applicable

standard, would not be disturbed by court); United Steel Workers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 598 (1960) (holding that where it "was not apparent" that arbitrator had gone "beyond submission", court cannot overrule his decisions because its interpretation of contract is different).

### 2. Essence of Decision Drawn from CBA

Similarly, the Arbitrator's conclusion that Employer was not free, under the CBA, to unilaterally eliminate entry-level positions (thus effectively writing-out specific contractual provisions) cannot be held to have been arbitrary, irrational, unsupported or unreasonable. To the contrary, it was expressly grounded in specific provisions of the parties' contract and reflected a reasonable analysis of the merits of the competing interpretations and considerations underlying the parties' dispute. Although the CBA reserves to Employer the classification of work and "the right to determine the number of employees assigned to said classifications" (Memorandum in Support of Plaintiff Union's Motion for Summary Judgment at 2), it also contains plain-language provisions regarding C jobs and plant seniority which the Arbitrator held the Employer was not at liberty to write out of its contractual agreement. The Arbitrator's conclusion - *i.e.* that rights to place work within classifications and determine the number of employees assigned to said classifications do not provide the right to unilaterally eliminate a classification Plant-wide - drew its essence from, and did not "ignore" any language of, the CBA. In other words, he reasonably determined that zero entry-level ("C job") positions was not a contractually-valid number given the other provisions of the parties' CBA. See Brentwood Medical Assocs. v. United Mine Workers of America, 396 F.3d 237, 243 (3d Cir. 2005) (holding that arbitration award be

enforced "if it was based on an arguable interpretation and/or application of the collective bargaining agreement"); Accuride Erie L.P. v. International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, 445 F.Supp.2d 496 (W.D. Pa. 2006) (holding that (a) award "draws its essence from the bargaining agreement" if the interpretation can in any rational way be derived from the CBA, viewed in light of its language, its context, and other indicia of the parties' intention; and (b) vacatur is appropriate only if award is entirely unsupported by the record or reflects "manifest disregard" for the CBA, as evidenced when it is totally unsupported by principles of contract construction); United Steelworkers, 363 U.S. at 597 ("When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies.")

### 3. Fees and Costs

As discussed above, this Court concludes that the Arbitrator acted within the scope of his authority and issued a Decision which drew its essence from the collective bargaining agreement, and that the award should be enforced. It further concludes, however, that the Union's challenge to the Arbitrator's award was not made in bad faith nor was it so unjustified or unreasonable as to warrant imposition of Employer's fees and costs. Kane Gas Light & Heating Co. v. International Brotherhood of Firemen & Oilers, 687 F.2d 673 (3d Cir. 1982) (denying motion for fees where challenge was not in bad faith, vexatious or made for oppressive reasons) (citing to rule of Mobile Oil Corp. v. Independ. Oil Workers Union, 679 F.2d 299 (3d Cir. 1982) (holding no

abuse of discretion where district court concluded party had proceeded in good faith)); see also Chamberlain Mfg. Co. v. Local Lodge No. 847, 474 F.Supp.2d 682 (M.D. Pa. 2007) (citing to Mobile rule and further noting that such sanctions are "intended only for exceptional circumstances"). Compare Teamsters Local Union No. 764 v. J.H. Merritt & Co., 770 F.2d 40 (3d Cir. 1985) (affirming district court's award of fees where considerations included skepticism as to party's good faith). The Court also finds the cases cited by Employer distinguishable for reasons well-stated in Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment.

### 4. Severability

Because it concludes that the Decision should be enforced in its entirety, this Court need not reach the validity of Plaintiff's assertion (unchallenged by Defendant) that if the portion of the Decision directing Employer to offer cross-bid entry-level positions to the Grievants was outside the Arbitrator's authority or otherwise subject to vacatur, the entire Decision should be vacated. This Court notes, however, that its research on the case *sub judice* called into question any such assumption. See, *e.g.*, Moyer v. Van-Dye-Way Corp., 126 F.2d 339, 341 (3d Cir. 1942) ("It is established, we believe, that an award may be rejected in part and sustained in part."); Eichleay Corp. v. Internat'l Assoc. of Bridge, Structural & Ornamental Ironworkers, 944 F.2d 1047, 1056 n. 8 (3d Cir. 1991) (noting that contention that award must be vacated in entirety was "simply wrong"); Swift Industries Inc. v. Botany Industries, Inc., 466 F.2d 1125 (3d Cir. 1972) (affirming vacation of portion of award whose essence was not drawn from contract). See also

13

Delta Queen Steamboat Co. v. Dist. 2 Marine Engineers Beneficial Assoc., 889 F.2d 599 (5th Cir. 1989) (affirming vacation of *ultra vires* portion of award); Enterprise Wheel and Car Corp. v. United Steelworkers of America, 269 F.2d 327, 330 (4th Cir. 1959), *rev'd in part on other grounds*, 363 U.S. 593 (1960) (describing prevailing view as that "even if the award exceeds the scope of the arbitration agreement it is not invalid in *toto* but only so far as it is excessive, if it is of such character that the court can separate the part within from the part beyond the submission") (citations omitted); Orion Shipping & Trading Co. v. Eastern States Petroleum Corp., 312 F.2d 299 (2d Cir. 1963); Industrial Mutual Assn. v. Amalgamated Workers, 725 F.2d 406 (6th Cir. 1984) (holding that better practice is to excise what cannot be enforced and leave the remainder intact). Cf. Defendant/Counterclaim Plaintiff's Reply to Plaintiff's Memorandum in Support of Motion for Summary Judgment at 1 (noting that the Union is challenging "the portion of the award in which the *Union* prevailed").

## III. **CONCLUSION**

For the reasons set forth above it is respectfully recommended that(a) the Defendant's Motion for Summary Judgment be granted as to enforcement of the arbitration award in its entirety, but denied as to its request for fees and costs, and (b) the Plaintiff's Motion for Summary Judgment be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file objections to this Report and Recommendation. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

        /s/ Lisa Pupo Lenihan
        LISA PUPO LENIHAN
        United States Magistrate Judge

Dated: August 22, 2008